UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

CHRIS SFORZA,

                                 Plaintiff,

              -against-

THE CITY OF NEW YORK, P.O. JOSEPH BONNER,
P.O. DENNIS MORGANO, P.O. BRYAN HANSON, P.O.
JORDAN BISTANY, SGT. LIZ SALINAS, SGT.
MICHAEL MCGOVERN, SGT. CHRISTOPHER
NEWSOM, SGT. RALPH PERFETTO, SGT. JOHN
ADRIANO, SGT. LUIGI PAGANO, P.O.s  JOHN and
JANE DOE #1-10, MCDONALD'S RESTAURANTS OF
NEW YORK, INC., and MCDONALD'S EMPLOYEES
JOHN and JANE DOE #11-20,

                                 Defendants.

------------------------------------------------------------------------ x

                                  07 Civ. 6122 (DLC)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION <u>FOR SUMMARY JUDGMENT</u>

Rose M. Weber
Attorney for Plaintiff
225 Broadway, Suite 1607
New York, NY 10007
(212) 748-3355

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 2

STANDARD FOR SUMMARY JUDGMENT............................................................. 5

ARGUMENT

       POINT I

              MOTIONS FOR SUMMARY JUDGMENT
              BEFORE THE CLOSE OF DISCOVERY ARE
              HIGHLY DISFAVORED........................................................... 6

       POINT II

              THE COMPLAINT ADEQUATELY PLEADS
              CLAIMS AGAINST EACH INDIVIDUAL
              DEFENDANT............................................................................ 7

       POINT III

              THERE WAS NO PROBABLE CAUSE FOR
              PLAINTIFF'S ARREST............................................................ 9

       POINT IV

              SUMMARY JUDGMENT MUST BE DENIED
              ON PLAINTIFF'S MALICIOUS PROSECUTION
              AND MALICIOUS ABUSE OF PROCESS
              CLAIMS.. .............................................................................. 13

       POINT V

              THE COMPLAINT ADEQUATELY PLEADS A
              CLAIM FOR EXCESSIVE FORCE.. ...................................... 17

       POINT VI

              PLAINTIFF HAS NOT PLED A CLAIM FOR
              DENIAL OF MEDICAL CARE............................................... 18

POINT VII

        PLAINTIFF HAS STATED A VIABLE CLAIM
        FOR VIOLATION OF EQUAL PROTECTION.. .................................... 19

POINT VIII

        PLAINTIFF HAS STATED VIABLE CLAIMS
        FOR CONSPIRACY.. .............................................................. 21

POINT IX

        DEFENDANTS ARE NOT ENTITLED TO
        QUALIFIED IMMUNITY.. ..................................................... 22

POINT X

        PLAINTIFF STATES A CLAIM AGAINST THE
        CITY OF NEW YORK............................................................ 25

CONCLUSION............................................................................ 26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

CHRIS SFORZA,

                                    Plaintiffs,

                 -against-

THE CITY OF NEW YORK, P.O. JOSEPH BONNER,         07 Civ. 6122 (DLC)
P.O. DENNIS MORGANO, P.O. BRYAN HANSON, P.O.
JORDAN BISTANY, SGT. LIZ SALINAS, SGT.
MICHAEL MCGOVERN, SGT. CHRISTOPHER
NEWSOM, SGT. RALPH PERFETTO, SGT. JOHN
ADRIANO, SGT. LUIGI PAGANO, P.O.s JOHN and
JANE DOE #1-10, MCDONALD'S RESTAURANTS OF
NEW YORK, INC., and MCDONALD'S EMPLOYEES
JOHN and JANE DOE #11-20,

                                  Defendants.

------------------------------------------------------------------------ x

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT_____**

**PRELIMINARY STATEMENT**

        Defendants City of New York, Joseph Bonner, Dennis Morgano, Bryan Hanson,

Jordan Bistany, Liz Salinas, Michael McGovern, Christopher Newsom, Ralph Perfetto, John

Adriano, and Luigi Pagano have moved for summary judgment.  Significantly, defendants have

made their motion before the close of discovery, and before plaintiff has had the opportunity to

obtain vital document discovery and to take any depositions whatsoever.  Plaintiff Chris Sforza

respectfully submits this Memorandum of Law in opposition to defendants' motion on the

grounds that material issues of fact exist and that defendants are not entitled to summary

judgment as a matter of law.

## STATEMENT OF FACTS

On the evening of July 10, 2006, plaintiff Chris Sforza, who is transgender, was a customer at a McDonald's restaurant in midtown Manhattan.  (Declaration of Chris Sforza ("Sforza Decl.") ¶¶ 1, 2; attached to the Declaration of Rose M. Weber ("Weber Decl.") as Exhibit A.)  Having finished her meal, plaintiff (who is a diabetic) went into the ladies' room to inject herself with insulin.  (*Id.* ¶¶ 3, 4.)  In less than a minute, the McDonald's manager (who allegedly felt that plaintiff had been in the bathroom for too long) began pounding on the door, yelling, "Get out of there, faggot."  (*Id.* ¶ 5; Def. Ex. D.)

When plaintiff opened the door and stepped out of the bathroom, the manager hit her in the cheekbone, back of head, arms, groin, and back with a metal pipe.  (Sforza Decl. ¶ 6.)  Other McDonald's employees looked on, chanting "Kill the faggot."  (*Id.* ¶ 7.)  As a result of this savage attack, several of plaintiff's teeth were knocked out, she was covered in blood, and she had severe visible bruising.  (*Id.* ¶ 8; Declaration of Diana Taylor ("Taylor Decl.") ¶ 3; attached to Weber Decl. as Exhibit B.)  At no point did plaintiff hit, kick, punch, strike, or otherwise assault the manager.  (Sforza Decl. ¶ 9.)  The manager had no visible injuries and could not possibly have had any injuries under his clothing.  (*Id.* ¶ 10.)

Plaintiff's friends called 911 on their cell phones, stating that plaintiff was being attacked by the McDonald's manager.  (*Id.* ¶ 11.)  When defendant police officers arrived, the manager was still holding the pipe, but the officers permitted him to hide it in a back room.  (*Id.* ¶ 12.)  The officers were extremely familiar and friendly toward the manager, high-fiving him, laughing with him, and telling him, "Good work," "I got you covered" and "It's going to jail." (*Id.* ¶ 13.)  Although EMTs were present at the scene and expressed concern that plaintiff had a head injury and required treatment, the officers would not allow plaintiff to be examined or treated, telling her, "Sit down, Miss Thing."  (*Id.* ¶¶ 14-16.)

Despite plaintiff's severe injuries and the lack of any injury to the manager, defendant police officers placed plaintiff under arrest for assault. (Def. Ex. C.) The officers handcuffed plaintiff so tightly that she immediately began screaming that the cuffs were hurting her, but defendants refused to loosen the cuffs.[1] (*Id.* ¶ 17.) As a result of this sadistic cuffing, plaintiff has permanent numbness (i.e., nerve damage) in both of her thumbs. (*Id.* ¶ 20.)

The officers pushed and dragged plaintiff out of the restaurant and deliberately banged her forehead twice against the roof of a police vehicle as they put her in. (*Id.* ¶ 21.) The bruising that this caused was so deep that it lasted for approximately two months after the incident. (*Id.* ¶ 22.) Plaintiff is certain that the injury to her forehead was caused by the police officers, as the manager did not hit her in her forehead. (*Id.* ¶ 23.)

Defendant police officers took plaintiff to the Midtown South Precinct. (*Id.* ¶ 24.) Two of the male arresting officers took plaintiff into a room and strip-searched her. (*Id.* ¶ 25.) They deliberately left the bathroom door open and approximately six male police officers stood outside, watching and laughing. (*Id.* ¶ 26.) Following the strip-search, when the officers tried to remove the handcuffs, the extreme tightness had caused plaintiff's wrists to swell so badly that the cuffs had disappeared into her flesh and the officers could not insert the key in the lock. (*Id.* ¶ 27.)

Plaintiff was finally taken to Bellevue Hospital, where she was examined. (*Id.* ¶ 28.) Doctors wanted to treat plaintiff for the injuries that the McDonald's manager and the police officers had inflicted upon her, but the escorting officers refused to allow that, saying

---

[1] Plaintiff asked several other times during this ordeal to have the cuffs loosened because they were hurting her and, each time, defendants refused. (*Id.* ¶ 18.) Plaintiff also asked repeatedly to be taken to the hospital, but defendants ignored all of her requests. (*Id.* ¶ 19.)

"This one is going to jail." (*Id.* ¶ 29.) Plaintiff was then taken to Manhattan Central Booking and ultimately arraigned, having spent approximately 24 hours in custody. (*Id.* ¶ 30.) On October 26, 2006, all charges against plaintiff were dismissed, on motion of the District Attorney's Office. (Certificate of Disposition; attached to Weber Decl. as Exhibit C.)

Meanwhile, plaintiff had been returning to the precinct every few days (on July 18th, July 21st, July 23rd, July 26th, August 3rd, and August 7th) to attempt to press charges against the McDonald's manager who had attacked her. (*Id.* ¶ 32.) Each time, plaintiff was kept waiting for hours, even though the desk officers were not otherwise occupied, and eventually left when it became obvious that she was not going to be permitted to file a complaint. (*Id.* ¶ 33.) Finally, during the August 7th visit, plaintiff was advised that, if she continued to return to the precinct, she would be arrested. (*Id.* ¶ 34.)

Plaintiff now brings the instant civil rights lawsuit, alleging false arrest, malicious prosecution, malicious abuse of process, excessive force, conspiracy, violation of equal protection, municipal liability, and violation of state and city human rights laws.

## STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment "may not be granted unless the court determines that there is no genuine issue of material fact and that the undisputed facts warrant judgment for the moving party as a matter of law." *Howard v. Schoberle*, 907 F. Supp. 671, 676 (S.D.N.Y. 1995). In determining whether summary judgment is appropriate, "[t]he court is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *International Union v. United States Marshal's Svce.*, 350 F. Supp. 2d 522, 527 (S.D.N.Y. 2004). "If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Howard*, 907 F. Supp. at 677 (citing *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)). In deciding a summary judgment motion, "the district court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). "[A]ll doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988).

## ARGUMENT

### POINT I

### MOTIONS FOR SUMMARY JUDGMENT BEFORE THE CLOSE OF DISCOVERY ARE HIGHLY DISFAVORED.

It is beyond question that the making of a summary judgment motion before the close of discovery is highly disfavored. *See, e.g., Trammell v. Keane*, 338 F. 3d 155, 161 n.2 (2d Cir. 2003) ("[W]e agree that only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."); *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F. 2d 147, 152 (2d Cir. 1990) ("[S]ummary judgment is generally disfavored when the party opposing the motion has not obtained discovery."); *Schlesinger Inv. Partnership v. Fluor Corp.*, 671 F. 2d 739, 743 (2d Cir. 1982) ("[S]ummary judgment should rarely be granted when the plaintiff has not had an opportunity to resort to discovery procedures."); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F. 2d 438, 445 (2d Cir. 1980) ("At least when the party opposing the motion has not been dilatory in seeking discovery, summary judgment should not be granted when he is denied reasonable access to potentially favorable information."); *D'Antonio v. Metropolitan Transp. Auth.*, No. 06 cv 4283 (KMW), 2008 WL 582354, at *3 (S.D.N.Y. Mar. 4, 2008) ("Summary judgment is strongly disfavored prior to the parties having had an adequate opportunity for discovery."); *International Action Center v. City of New York*, No. 05 CIV. 2880 (SHS), 2006 WL 3802195, at *4 (S.D.N.Y. Dec. 26, 2006) (same). Accordingly, the Court would be absolutely justified in denying defendants' motion on that basis alone.

## POINT II

## THE COMPLAINT ADEQUATELY PLEADS CLAIMS AGAINST EACH INDIVIDUAL DEFENDANT.

In their moving brief, defendants argue that the complaint "does not give proper notice of the allegations and claims against any individual City defendant."  (Def. Mem. at 7.) This is simply untrue.  Even a cursory reading of the complaint reveals that paragraphs 32 through 41 and paragraph 47 must refer, by their terms, to the officers who were present at the scene (i.e., P.O.s Bonner, Morgano, Hanson, and Bistany), that paragraph 43 refers to the same four officers and also to Sgt. Salinas (who was the desk officer on the night of plaintiff's arrest), and that paragraph 46 refers only to the desk officers who subsequently refused to take plaintiff's complaint (i.e., Sgts. Salinas, McGovern, Newsom, Perfetto, Adriano, and Pagano).

"To satisfy the simplified notice pleading standard of Fed. R. Civ. P. 8, the complaint must merely give the defendant fair notice of what plaintiff's claim is and the grounds upon which it rests." *Appalachian Enterprises, Inc. v. ePayment Solutions, Ltd.*, No. 01 CV 11502, 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) (citing *Swiekiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002)).  "Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, and therefore is not meant to impose a great burden upon a plaintiff." *Valenzuela v. Riverbay Corp.*, No. 06 Civ. 903 (DLC), 2007 WL 414487, at *2 (S.D.N.Y. Jan. 31, 2007). "Dismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised. When the court chooses to dismiss, it normally grants leave to file an amended pleading that conforms to the requirements of Rule 8.  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (internal citations omitted).

In the instant matter, the complaint gives each defendant fair notice of the allegations and claims against him or her.  Should the Court determine that the complaint requires clarification in this regard, however, the proper course is to permit plaintiff to amend the complaint, limited to inserting the names of the officers in the various paragraphs.  *See, e.g., Wormer v. City of Rensselaer*, No. 07-1641-cv, 2008 WL 4326525, at *2 (2d Cir. Sept. 22, 2008) ("A Rule 8(a)(2) dismissal without leave to amend is rarely warranted.") (citing *Salahuddin, supra*); *State of New York v. Dairylea Co-op. Inc.*, 570 F. Supp. 1213, 1216 (S.D.N.Y. 1983) (leave to replead granted where complaint not sufficiently detailed as to individual defendants).

## POINT III

### THERE WAS NO PROBABLE CAUSE FOR PLAINTIFF'S ARREST.

Defendant police officers' sole argument in support of their request for summary judgment on plaintiff's false arrest claim is that they had probable cause to arrest plaintiff because the McDonald's manager said that she had assaulted him.

However, as a matter of law, the manager's uncorroborated statements did not provide probable cause to arrest plaintiff.  *See Wu v. City of New York*, 934 F. Supp. 581, 587 (S.D.N.Y. 1996) ("Second Circuit case law stresses the importance of investigation and corroboration."); *Golden v. City of New York*, 418 F. Supp. 2d 226, 232-33 (E.D.N.Y. 2006) (allegations of a victim alone may not establish probable cause unless information is sufficiently reliable and corroborated); *Oliveira v. Mayer*, 23 F.3d 642, 647 (2d Cir 1994) (information provided by witness must be "sufficiently reliable and corroborated"); *Marin v. Viggiani*, No. 92 CIV. 3836, 1993 WL 404098, *8 (S.D.N.Y. Oct. 5, 1993) (victim's complaint must be accompanied by "independent corroborative evidence to support at least some of the victim's assertions").

Just two years ago, the Honorable Paul A. Crotty wrote that "[t]he fact that a victim provides the police with information of an alleged crime does not, without more, establish probable cause. Rather, the officer has a duty to assess the reliability of the victim and, if circumstances call into doubt the victim's veracity, to investigate the allegations and corroborate them."  *Jovanovic v. City of New York*, No. 04 Civ. 8437, 2006 WL 2411541, *7 (S.D.N.Y. Aug. 17, 2006).  Judge Crotty went on to cite *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 571 (2d Cir. 1996), for the proposition that "the failure to make a further inquiry when a reasonable person would have done so may be evidence of a lack of probable cause."  *Id.*

Furthermore, the word of an unreliable complaining witness does not, as a matter of law, provide probable cause to arrest.  The Second Circuit has held that "[a]n arresting officer advised of a crime by a person who claims to be the victim . . . has probable cause to effect an arrest *absent circumstances that raise doubts as to the victim's veracity.*"  *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir. 1995) (emphasis added); *see also Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("The reliability or veracity of the informant and the basis for the informant's knowledge are two important factors" in determining whether probably cause to arrest existed); *Brewton v. City of New York*, 550 F. Supp. 2d 355, 367 n.12 (E.D.N.Y. 2008) ("As an initial matter, it was unreasonable for Detective Hovington to blindly credit Regan where, as here, Regan's motives to lie were patent."); *Bullard v. City of New York*, No. 01 CIV. 11613, 2003 WL 168444, at *4 (S.D.N.Y. Jan. 20, 2003) (refusing to dismiss complaint where "there were sufficient indications that the complainants were not reliable sources of probable cause and the defendants did nothing to investigate the allegations, corroborate them, or pursue [plaintiff's] claims that he was innocent."); *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998) ("However, officers are not absolutely privileged to arrest upon a charge by any private individual who claims to be a victim. Some people have axes to grind."); *Miloslavsky v. AES Eng'g Soc., Inc.,* 808 F. Supp. 351, 355 (S.D.N.Y. 1992) (probable cause can be established by information from an eyewitness "who it seems reasonable to believe is telling the truth.").

Just last year, the Honorable Richard M. Berman wrote, "Because, as here, the existence of probable cause often turns on disputed issues of fact relating to the reliability of the information presented to the arresting officer and the reasonableness of his or her investigation, "the issue of probable cause is not amenable to disposition by summary judgment."  *Hill v. City of New York*, No. 05 Civ. 9473, 2007 WL 4592000, *3 (S.D.N.Y. Dec. 28, 2007).

In the instant matter, the defendant police officers responded to a 911 call stating that plaintiff was being beaten by the McDonald's manager.  When they arrived, they found plaintiff bruised, bloodied, and missing teeth, and they found the McDonald's manager completely uninjured.  Nonetheless, defendant police officers refused to allow plaintiff, the obvious victim, to describe what had happened, and instead spoke and joked with the manager. Defendant police officers then stated to the manager, "Good work," "I got you covered," and "It's going to jail."

Obviously the manager was not a reliable complaining witness, both because he was the obvious perpetrator of the crime, and because his lack of injuries contradicted his account of what had transpired.  The manager's statements were also completely uncorroborated, either by witnesses[2] or by any evidence of physical injuries.[3]  Indeed, it is plaintiff who had visibly been badly beaten.  Probable cause is negated when an officer ignores readily available evidence, such as plaintiff's injuries and the lack of any injury to the manager.  *See, e.g., Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("[A]n officer may not disregard plainly exculpatory evidence."); *Kerman v. City of New York*, 261 F.3d 229, 241 (2d Cir. 2001) ("An officer contemplating an arrest is not free to disregard plainly exculpatory evidence."); *Celestin v. City of New York*, No. 04-CV-3009, 2008 WL 4560562, *11 (E.D.N.Y. Oct. 14, 2008) ("The police must not ignore exculpatory evidence that would void probable cause if taken into

---

[2] The police paperwork refers to three witnesses, but is silent as to what those witnesses allegedly reported.

[3] The police paperwork refers to "bruising and swelling" to the manager's legs.  It is not clear whether this is based on the manager's report or if the officers are claiming to have seen the injuries.  In any event, on this motion for summary judgment, the Court must accept plaintiff's statement that she did not assault the manager in any way.  Accordingly, there could not have been any injuries, visible or otherwise.

account."); *Aguilera v. County of Nassau*, 453 F. Supp. 2d 601,  607 (E.D.N.Y. 2006) ("While a police officer that has a reasonable basis for believing there is probable cause is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest, [neither] may he ignore plainly exculpatory evidence." (internal citation omitted)).

Under the totality of the circumstances of this particular incident, a jury could find that defendants lacked probable cause to arrest plaintiff and, accordingly, summary judgment on the false arrest claim is not appropriate.

**POINT IV**

**SUMMARY JUDGMENT MUST BE DENIED ON PLAINTIFF'S MALICIOUS PROSECUTION AND MALICIOUS ABUSE OF PROCESS CLAIMS.**

**A.** **Malicious Prosecution**

   In their moving papers, defendants argues that plaintiff cannot satisfy three of the four elements of the *prima facie* case for malicious prosecution – that defendants initiated the prosecution, that there was no probable cause for the prosecution, and that defendants acted with actual malice.  Defendants' arguments are without merit.

   **1.**   **Defendants Initiated the Prosecution as a Matter of Law.**

   In their moving brief, defendants argue that they did not initiate plaintiff's prosecution because they did not "encourage" or "insist upon" the prosecution.  As defendants tacitly acknowledge, however, if they misled the prosecutor, then as a matter of law, they initiated the prosecution.

   The Second Circuit has stated that "the public prosecutor's role in a criminal prosecution will not necessarily shield a complaining witness from subsequent civil liability where the witness's testimony is knowingly and maliciously false.. . . We have assumed in the past that police officers are subject to liability for malicious prosecution as any other defendant would be."  *White v. Frank*, 855 F.2d 956, 962, 962 n.6 (2d Cir. 1988); *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) ("A jury could also find that Lt. Wheeler was instrumental in bringing about the charges of second-degree aggravated harassment. Although these charges were added by the Bronx district attorney's office, and thus not directly filed by Lt. Wheeler, a jury could find that Lt. Wheeler played a role in initiating the prosecution by preparing the alleged false confession and forwarding it to prosecutors."); *Blake v. Race*, 487

F. Supp. 2d 187, 211 (E.D.N.Y. 2007) ("[D]efendants cannot hide behind the decision of the DA to prosecute when it was defendants who allegedly fed the facts to Garner, thereby providing the unknowing DA with what may be considered a fabricated eyewitness."; *Webster v. City of New York*, 333 F. Supp. 2d 184, 198-99 (S.D.N.Y. 2004) ("Crediting Plaintiffs' version of events and drawing reasonable inferences in their favor, a reasonable fact-finder might conclude that the information provided in the Kings County Criminal Court Complaint . . . concerning McKenzie's gesturing with his hand held like a gun was false, as McKenzie denies having made any such gesture.  Accordingly, there is a triable issue, at least with regard to Rodriguez and Velasquez, . . . as to whether they procured or initiated McKenzie's prosecution on the basis of false information."); *Giannattasio v. Artuz*, No. 97 CIV. 7606, 2000 WL 335242, at *4 (S.D.N.Y. Mar. 30, 2000) (first prong satisfied where one correction officer allegedly fabricated evidence and another filed supporting deposition regarding same evidence); *Chimurenga v. City of New York*, 45 F. Supp. 2d 337, 343 (S.D.N.Y. 1999) ("While the defendants would be correct if all they had done was to provide truthful information and evidence to prosecuting authorities, there is . . . a triable issue as to whether the defendants planted evidence on the plaintiff.   Where a party is responsible for providing false information or manufactured evidence that influences a decision whether to prosecute, he may be held liable for malicious prosecution.").

In the instant matter, if plaintiff's version of events is credited – which it must be – then defendants failed to advise prosecutors that plaintiff had been badly beaten by the McDonald's manager, and that the manager was entirely uninjured.  In deliberately withholding such vital evidence from prosecutors, defendants "initiated" plaintiff's prosecution for purposes of a malicious prosecution claim.  *See, e.g., Komlosi v. Fudenberg*, No. 88 Civ. 1792, 2000 WL 351414, at *9-10 (S.D.N.Y. Mar. 31, 2000) ("Defendant first argues that she is entitled to

judgment as a matter of law because the evidence was insufficient to support a finding that she caused the commencement of the criminal prosecution against plaintiff.. . . Where, as here, a defendant willfully and maliciously causes false information to be presented to prosecuting officials, the prosecutor's decision, based on the false information, will not shield the source from liability for malicious prosecution.

### 2. There Was No Probable Cause to Prosecute Plaintiff.

The same factual disputes that preclude summary judgment on plaintiff's claim for false arrest likewise preclude summary judgment on plaintiff's claim for malicious prosecution. *See, e.g., Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (summary judgment on malicious prosecution claim precluded where facts in dispute); *Blazina v. Port Authority*, No. 06 Civ. 481, 2008 WL 919671, at *6 (S.D.N.Y. Apr. 1, 2008) (same).

### 3. The Element of "Malice" May Be Inferred from the Absence of Probable Cause.

Defendants argue that "plaintiff has come forward with no facts to evidence any personal animus towards her."[4] (Def. Mem. at 15.) It is well established, however, that "lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997). *See also Chimurenga v. City of New York*, 45 F. Supp. 2d 337, 343 (S.D.N.Y. 1999) (where "there is a triable issue as to probable cause, there will almost always be a triable issue as to malice, since the existence of malice may be inferred from a finding that defendants lacked probable cause.");

---

[4] In addition to being legally irrelevant, this statement is ludicrous. Plaintiff alleges that defendants arrested her for no good reason, refused to arrest her attacker, told the attacker that they "had him covered," sadistically handcuffed her, deliberately smashed her head into the police car, denied her medical care, and unlawfully strip-searched her. If this does not demonstrate "personal animus," it would be hard to say what does.

*Wu v. City of New York*, 934 F. Supp. 581, 592 (S.D.N.Y. 1996) ("The absence of probable cause bears on the issue of malice, and a jury may infer malice from an arrest for which probable cause was totally lacking."); *see also Ramos v. City of New York*, 729 N.Y.S.2d 678, 691 (App. Div. 1st Dept. 2001) ("Regarding the element of malice, a plaintiff need not demonstrate the defendant's intent to do him or her personal harm, but need only show a reckless or grossly negligent disregard for his or her rights.").

**B.**     **Malicious Abuse of Process**

Defendants argue in their moving brief that plaintiff cannot demonstrate that defendants had a collateral objective in arresting her.  Here, again, defendants utterly ignore the issues of material fact that preclude summary judgment and fail to acknowledge that plaintiff's testimony is evidence.  *See, e.g., Henry v. City of New York*, No. 02 Civ. 4824, 2003 WL 22077469, at *4 (S.D.N.Y. 2003) ("The factual dispute regarding the planting of evidence precludes granting summary judgment on the malicious abuse of process claim.").

According to plaintiff, defendant police officers appeared to know the McDonald's manager and were extremely friendly towards him.  Indeed, the officers advised the manager that they "had him covered."  A reasonable jury could believe that the instant arrest and prosecution were undertaken for the purpose of avoiding arresting the manager, who was the obvious perpetrator of the assault.  Under the law of this Circuit, such a motive is more than sufficient for purposes of establishing the "collateral objective" element of a claim for malicious abuse of process.  *See, e.g., Richardson v. City of New York*, No. 02 CV 3651, 2006 WL 2792768, at *7 (E.D.N.Y. Sept. 27, 2006) (defendants' fabrication of testimony and/or evidence to protect their own reputations was sufficient "collateral purpose"); *Hernandez v. City of New York*, No. 01 Civ. 4376, 2003 WL 22771982, at *9 (S.D.N.Y. Nov. 24, 2003) (defendant's fear of losing job satisfies collateral objective element); *Granito v. Tiska*, 181 F. Supp. 2d 106, 118

(N.D.N.Y. 2001) (defendant's goal of intimidating and embarrassing plaintiff satisfies collateral objective element); *Brawer v. Carter*, 937 F. Supp. 1071, 1082 (S.D.N.Y. 1996) (defendant's goal of currying favor with plaintiff's ex-wife satisfies collateral objective element).

### POINT V

### THE COMPLAINT ADEQUATELY PLEADS A CLAIM FOR EXCESSIVE FORCE.

Defendants, who have not yet even deposed plaintiff, argue in an entirely conclusory fashion that plaintiff's injuries are *de minimis*. This is simply untrue. According to plaintiff, defendant police officers deliberately smashed her head twice into a police vehicle, causing severe bruising to her forehead that lasted for several weeks. Plaintiff also maintains that she was deliberately handcuffed so tightly that the cuffs bit deeply into her flesh, causing her wrists to swell so badly that the cuffs were not even visible; that defendant police officers refused to loosen the cuffs when plaintiff complained that they were too tight; and that this sadistic cuffing caused permanent nerve damage, as evidenced by numbness in both thumbs. These are not *de minimis* injuries. *See, e.g., Robison v. Via*, 821 F.2d 913, 923-24 (2d Cir. 1987) (assertion that plaintiff pushed against car, yanked out, thrown against fender, and had arm twisted, causing "bruises lasting a couple weeks" sufficient to prevent summary dismissal of § 1983 claim for excessive force); *Li v. Aponte*, No. 05 Civ. 6237 (NRB), 2008 WL 4308127, at *6 (S.D.N.Y. Sept. 16, 2008) ("Bruising alone is sufficient to preclude summary judgment on the ground that the force employed was *de minimus*."); *Simpson v. Saroff*, 741 F. Supp. 1073, 1078 (S.D.N.Y. 1990) (punched stomach, swollen, bleeding wrists, faintly detectable scar sufficient to allege § 1983 claim)

Furthermore, this very Court has held that "While [plaintiff's] injuries appear *de minimis,* his statements that he was shoved in the police car in a manner that injured his shoulder

and that the handcuffs were placed so as to leave red marks on his wrists raise material issues of fact not addressed by the defendants. Summary judgment is therefore inappropriate on [plaintiff's] claim for excessive force." *Lucky v. City of New York*, No. 03 Civ. 1983 (DLC), 2004 WL 2088557, at *7 (S.D.N.Y. Sept. 20, 2004).

      Defendants also appear to argue that plaintiff's claim for excessive force must be dismissed because she has not produced medical evidence of her injuries.  First, the parties have simply thus far been unable to obtain plaintiff's medical records from Bellevue Hospital, even though it is beyond dispute that plaintiff was taken to Bellevue and that the records, therefore, exist.  Second, and more importantly, there is no requirement that a plaintiff have sought medical treatment in order to bring a claim for excessive force.  *See, e.g., Robison*, 821 F.2d at 924 ("While Robison did not seek medical treatment for her injuries, and this fact may ultimately weigh against her in the minds of the jury in assessing whether the force used was excessive, this failure is not fatal to her claim.   If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."); *Ninortey v. Shova*, No. 05 Civ. 542 (SHS), 2008 WL 4067107, at *12 (S.D.N.Y. Sept. 2, 2008) (collecting cases and noting that, "Courts in this district have not required that injuries caused by the alleged use of excessive force be corroborated by medical records.").

### POINT VI

### PLAINTIFF HAS NOT PLED A CLAIM FOR DENIAL OF MEDICAL CARE.

      The complaint does not include a cause of action for deprivation of medical care. To the extent that the complaint states that EMTs were present at the scene, it is simply to note that defendant police officers refused to allow plaintiff to receive medical treatment, even though the treatment was readily available.  This is further evidence of their animus toward plaintiff.

### POINT VII

### PLAINTIFF HAS STATED A VIABLE CLAIM
### <u>FOR VIOLATION OF EQUAL PROTECTION.</u>

Defendants argue, inexplicably, that plaintiff has not "alleged facts to support that she and other similarly situated persons were treated differently based on an impermissible consideration." (Def. Mem. at 20.) Plaintiff's eighth cause of action, however, alleges exactly that – that plaintiff was not permitted to file criminal charges against the McDonald's manager, while individuals who are not transgender are routinely permitted to file criminal charges when they have been brutally beaten. (3d Am. Compl. at ¶¶ 89-90.) Because this motion was made before the close of discovery, plaintiff has not yet had an opportunity to obtain the *Monell* discovery that will permit her to allege more specific facts in this regard.[5]

Despite the odd timing of the instant motion, plaintiff can and does allege facts that could permit a jury to decide that her equal protection rights were violated: that she is transgender, that she went to the precinct numerous times, that her serious injuries were visible during those visits, that she was never affirmatively told that she could not file a complaint, but rather was left sitting for hours on end for no legitimate reason, and that she never succeeded in filing a complaint against her attacker. Additional discovery is essential, in that it will permit plaintiff to explore the motivations and biases of the various desk officers, and also will reveal

---

[5] Nor has plaintiff had the opportunity to depose the desk officers who refused to take her complaint. She is, therefore, impermissibly unable to respond to defense counsel's rank conjecture as to what <u>may</u> have been going on in the minds of the desk officers. This is simply another example of the impropriety of defendants having brought their motion at this time. In any event, defense counsel may not now make up possible reasons for the unlawful actions of her clients.

whether NYPD has a pattern or practice of denying transgender individuals the right to file complaints.

Defendants also claim that plaintiff cannot bring an equal protection claim on the basis of being transgender because "this is not a protected classification under federal law." (Def. Mem. at 20.)  This argument is, of course, wrong as a matter of law.  It is hornbook law that claims by protected classes will be subject to strict scrutiny, while claims by other classes will receive rational basis analysis.  *See, e.g., Harris v. County of Nassau*, No. CV 07-1866, 2008 WL 4425284, at *6 (E.D.N.Y. Sept. 29, 2008) ("The Fourteenth Amendment right to Equal Protection of the law is essentially a direction that all persons similarly situated be treated alike. While an equal protection claim may be based upon the allegation that plaintiff was a victim of discrimination due to membership in a protected class, the right to equal protection also extends to individuals who allege disparate treatment based upon ill will or without rational basis." (internal citations omitted)); *Blount v. Swiderski*, No. 2:03-cv-0023, 2006 WL 3314635, at *12 (E.D.N.Y. Nov. 14, 2006) ("[Plaintiff] alleges that the defendants violated her equal protection rights by purposely failing, because of constitutionally improper motives, to investigate her complaint as they would investigate other complaints.  Thus, [plaintiff's] claim is grounded in equal protection . . . [W]hile there is no federal constitutional right to an adequate investigation *per se,* courts have recognized section 1983 claims that involve the selective denial of equal protection based on the discriminatory failure of public officials to conduct a proper investigation .")

## POINT VIII

## PLAINTIFF HAS STATED VIABLE CLAIMS
## FOR CONSPIRACY.

In regard to plaintiff's claims for conspiracy, defendants appear to be relying upon boilerplate arguments that have no relevance to the instant matter.  Specifically, defendants maintain that plaintiff "cannot prove an agreement between a state actor and a private party to act in concert to inflict an unconstitutional injury and an overt act in furtherance of that goal."  (Def. Mem. at 22.)  Plaintiff alleges, however, that defendant police officers, having observed that plaintiff was seriously injured and the manager not injured at all, then conferred privately and in a friendly manner with the manager, commended the manager for his "good work" and told that they "had him covered," and then proceeded to arrest plaintiff, the victim of the manager's assault.

Similarly, defendants note that a § 1985 conspiracy "must be motivated by class-based invidious discriminatory animus."  (*Id.*)  That is precisely why, at paragraph 86 of the Third Amended Complaint, plaintiff alleges that "Defendants' actions were motivated by animus toward transgender individuals."  Plaintiff's testimony is that defendant police officers referred to her as "it" and called her "Miss Thing."  Without benefit of much of the relevant paper discovery and any depositions whatsoever, plaintiff can hardly be expected to proffer any additional facts at this time.

## POINT IX

## DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

As has been widely noted, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The instant matter presents both an example of plain incompetence and a material issue of fact as to whether defendants knowingly violated the law.

Defendants Bonner, Morgano, Hanson, and Bistany, responding to a 911 call stating that a McDonald's manager was assaulting a patron, arrived to find plaintiff badly beaten and the manager completely unharmed.[6] Defendants refused to speak with plaintiff and, instead, had a friendly conversation with the manager, culminating in them telling him that he had done "good work" and that they "had him covered." Defendants then proceeded to arrest plaintiff for assault.

Confronted with the facts of this case, a jury could find that no reasonably competent officers[7] would have arrested plaintiff, who was obviously the victim of an assault,

---

[6] To the extent that defendants dispute these facts, all they have done is raise an issue that precludes summary judgment. *See, e.g., McClellan v. Smith*, 439 F.3d 137, 148 (2d Cir. 2006) (reversing grant of summary judgment because the "District Court generally failed to heed the rule that resolution of genuine factual issues is inappropriate on motions for summary judgment based on qualified immunity."); *Kerman v. City of New York*, 261 F.3d 229, 241 (2d Cir. 2001) (reversing grant of summary judgment on qualified immunity grounds because of factual disputes as to what occurred during incident); *Dallas v. Goldberg*, No. 95 CIV. 9076 (DLC), 1997 WL 728153, at *8 (S.D.N.Y. Nov. 20, 1997) (motion for summary judgment based on qualified immunity denied where issues of fact as to what arresting officer knew at time of arrest).

[7] Although defendant Bonner was nominally plaintiff's "arresting officer" for purposes of the NYPD paperwork, plaintiff contends that all of the officers present at the scene were either directly involved in her arrest (and in the excessive forced used against her) or failed to intervene when given the opportunity.

not the perpetrator.  Summary judgment might be denied on that basis alone.  *See, e.g., Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (emphasis added) ("[I]f any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment. An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances. Thus, if the court determines that the <u>only</u> conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate."); *Rueda v. Kreth*, No. 01 CV 2819, 2005 WL 323711, at *3 (E.D.N.Y. Feb. 7, 2005) ("[I]f any rational jury could find that the officer's actions were objectively unreasonable, then summary judgment must be denied.").

There is, however, another and equally compelling reason to deny summary judgment on the basis of qualified immunity.  There are, at the very least, material issues of fact as to whether defendants deliberately falsified their police paperwork.  These issues of fact preclude the possibility of summary judgment.  The paperwork a) fails to state that plaintiff was seriously injured and the manager not injured at all, (Def. Ex. C, D, H, I), b) at least implies that defendants saw the (non-existent) "bruising" and "swelling" to the manager's legs, (Def. Ex. C, D, G, H, I), c) includes photographs that purport to document the non-existent injuries but do not (Def. Ex. I, L; Pl. Ex. D), and d) mischaracterizes plaintiff's severe injuries as being nothing more than a bruised left arm, (Def. Ex. J, K).  The possibility that defendants falsified paperwork is sufficient to deny them any possible right to qualified immunity.  *See, e.g., Babi-Ali v. City of New York*, 979 F. Supp. 268, 275 (S.D.N.Y. 1997) ("[T]he right of qualified immunity does not protect those who knowingly violate the law.  Plaintiff has alleged knowing falsification and perjury.  Accepting such allegations as true requires this Court to find that the defense of

qualified immunity will not protect [defendant] from liability." (internal citations omitted));
*Richardson v. City of New York*, No. 02 CV 3651, 2006 WL 2792768, at *3 (E.D.N.Y. Sept. 27, 2006) ("Since no reasonably competent officer could believe that it was lawful to identify Richardson falsely, qualified immunity is unavailable for UC # 7404 at this summary judgment stage.").

Indeed, even if plaintiff's arrest were otherwise lawful (which it was not), the allegation as to falsification of police paperwork is sufficient to preclude summary judgment regarding qualified immunity:

> Each of the defendants insists that so long as there was probable cause for Alfred Ricciuti's arrest -- independent of the allegedly fabricated evidence -- the fabrication of evidence is legally irrelevant. In essence, they argue that as long as the arrest complied with the Fourth Amendment, the Ricciutis can have no claim for post-arrest fabrication of evidence against them.

> This argument -- an ill-conceived attempt to erect a legal barricade to shield police officials from liability -- is built on the most fragile of foundations; it is based on an incorrect analysis of the law and at the same time betrays a grave misunderstanding of those responsibilities which the police must have toward the citizenry in an open and free society. No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee.

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129-30 (2d Cir. 1997) (reversing district court grant of summary judgment on qualified immunity grounds).

## POINT X

## PLAINTIFF STATES A CLAIM AGAINST THE CITY OF NEW YORK.

Here yet again, defendants appear to have cut-and-pasted boilerplate arguments that utterly ignore the facts of this case.  In their moving papers, defendants claim that, "In her complaint, plaintiff does not identify any policy, custom or practice that resulted in a violation of her rights.  (Def. Mem. at 25.)  Paragraph 94 of the Third Amended Complaint, however, alleges "that policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department included, but were not limited to, arresting and prosecuting individuals solely because they are transgender, manufacturing false charges against such individuals, using excessive force against such individuals, and allowing members of the opposite sex to search such individuals."

Defendants then go on to note that "a single incident is insufficient to establish *Monell* liability."  (Def. Mem. at 25.)  This is, of course, correct.  Had defendants waited to make their motion until after they had taken plaintiff's deposition, and had they asked the appropriate questions, they would have learned of numerous other transgender individuals whose constitutional rights have been violated by NYPD.  Defendants are also in possession of documents (documents that have been demanded by plaintiff in discovery but not yet produced), that will verify that NYPD has a long-standing custom of violating the rights of transgender individuals.[8]

---

[8] Plaintiff's counsel alone represents or has represented six transgender individuals who have been abused in one way or another by NYPD, all in separate incidents.

## <u>CONCLUSION</u>

For the reasons set forth above, plaintiff respectfully requests that the Court deny

summary judgment on all claims.

Dated:          New York, New York
                December 5, 2008


                                ROSE M. WEBER
                                Attorney for Plaintiff
                                225 Broadway, Suite 1607
                                New York, NY 10007
                                (212) 748-3355


                        By:    _____/s_____
                                ROSE M. WEBER (RW 0515)

26