UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
CHRIS SFORZA,                           :
                          Plaintiff,    :
                                        :    07 Civ. 6122 (DLC)
            -v-                         :
                                        :    OPINION AND ORDER
CITY OF NEW YORK, et al.,               :
                          Defendants.   :
----------------------------------------X

Appearances:

For Plaintiff:

Rose M. Weber
Rose M. Weber Law Office
225 Broadway, Suite 1608
New York, New York 10007

For Defendants City of New York and individual City Defendants:

Susan P. Scharfstein
New York City Law Department
100 Church Street
New York, New York 10007

DENISE COTE, District Judge:

     This lawsuit concerns allegations of civil rights

violations stemming from plaintiff's arrest at a McDonald's

restaurant and her treatment by the New York City Police

following the arrest.  Defendants the City of New York (the

"City"), Officers Joseph Bonner, Dennis Morgano, Bryan Hanson,

and Jordan Bistany, and Sergeants Liz Salinas, Michael McGovern,

Christopher Newsom, Ralph Perfetto, John Adriano, and Luigi

Pagano (collectively, the "City Defendants") have moved to

dismiss plaintiff Chris Sforza's Third Amended Complaint under
Rules 8(a), 12(b)(1), 12(b)(6), and 56, Fed. R. Civ. P.  The
motion is granted with the exception of the motion to dismiss
the excessive force claim brought against the City.

BACKGROUND

Before addressing the parties' legal arguments, the
plaintiff's allegations will be summarized and the relevant
procedural history of this litigation will be set forth in some
detail.  The procedural history underlies the defendants' motion
to dismiss all claims against the individual City Defendants.

1.  July 11, 2006 Arrest

Plaintiff, a transgender female, alleges that she was
attacked by a McDonald's employee wielding a metal pipe on July
11, 2006, while injecting herself with insulin in a bathroom at
a Manhattan branch of the restaurant to treat her diabetes.
Police officers soon arrived on the scene and allegedly arrested
plaintiff without probable cause, telling the McDonald's
employee that "I got you covered" and allowing him to hide the
pipe in a back room at the restaurant.  While taking Sforza into
custody, the officers allegedly slammed her head onto the roof

2

of a patrol car and handcuffed her too tightly, causing injuries that persist to the present day.[1]

Sforza also claims that the officers refused to take her to the hospital for treatment, bringing her first to Manhattan South Precinct instead.  She was later transported to the hospital and then returned to the precinct.  There, plaintiff alleges, she was strip-searched in full view of male police officers and held in police custody for 24 hours.  Sforza was subsequently prosecuted on two counts of assault in the third degree, one count of attempted assault in the third degree, and one count of harassment in the second degree.  The charges were dismissed on October 26, 2006.

Sforza alleges that no probable cause for the prosecution existed and that defendants withheld exculpatory evidence and falsified evidence before the District Attorney.  She also alleges that, following her release from custody, officers at the precinct refused to allow her to file charges against the McDonald's employee who she maintains assaulted her, despite repeated requests.

2. Delays in Initiating the Lawsuit

Sforza filed a complaint against the City, McDonald's Corporation, and unidentified employees of the New York City

---

[1] At a December 17, 2007 initial conference, plaintiff's counsel explained that the plaintiff suffered no permanent physical injuries but remained traumatized by these events.

Police Department and McDonald's on June 29, 2007, bringing claims under 42 U.S.C. §§ 1983 ("§ 1983") and 1985 ("§ 1985") for deprivation of civil rights, false arrest, malicious prosecution, abuse of process, excessive force, conspiracy, violation of equal protection, and municipal liability against the City Defendants.[2]  She also brought pendent state claims for false arrest, assault, battery, malicious prosecution, abuse of process, intentional or negligent infliction, prima facie tort, negligent hiring, training, supervision, and retention against McDonald's Corporation and its employees, as well as claims under the state and city Human Rights Laws against all defendants.

On July 19, defendant the City of New York requested and received a sixty-day extension, from July 23 to September 24, 2007, to respond to the complaint.  The City, with plaintiff's consent, sought the extension because the plaintiff had named no individual defendants in the action, and the records of the incident, including police records, may have been sealed pursuant to New York Criminal Procedure Law § 160.50.[3]  The City

---

[2] Sforza's conspiracy claims are brought against McDonald's and its employees as well.

[3] § 160.50 provides, in part, that

> [u]pon the termination of a criminal action
> or proceeding against a person in favor of
> such person . . . unless . . . such person
> or his or her attorney demonstrates to the

needed to review the records of the matter in order to respond to the complaint in compliance with its obligations under Rule 11, Fed. R. Civ. P., and it could not do so until plaintiff executed a consent and authorization releasing the records (the "release").  The City represented that it had forwarded to plaintiff the consent and authorization.

It took more than two months, three more letters to the Court from the City, and a Court Order to obtain the necessary release from the plaintiff so that the litigation could begin. The City wrote on September 7, 2007 to request, with plaintiff's and co-defendant McDonald's consent, an additional forty-five days to respond to the allegations of the complaint.  The City stated that it had forwarded the release to plaintiff on July 24, 2007 and again on August 14, 2007, and that plaintiff's counsel, Rose Weber ("Weber"), had recently promised to produce the release by September 14.  A September 11 endorsement granted the City's request for an extension to respond to the complaint until October 31, and adjourned the initial conference, which had been scheduled for October 5, to October 26.

By September 24, plaintiff had still not produced the release, and the City wrote to request a further adjournment of

satisfaction of the court that the interests
of justice require otherwise . . . the
record of such action or proceeding shall be
sealed . . . .

the initial conference and an Order requiring plaintiff to produce the release and warning plaintiff that she risked dismissal for failure to prosecute.  Without the release, the City stated, it was unable to learn the identities of any of the police officers allegedly involved in the incident, as plaintiff had not named any in the complaint.

Plaintiff proceeded to file her first amended complaint two days later, substituting a different McDonald's entity, McDonald's Restaurants of New York, Inc. ("McDonald's"), as defendant.  She also hand-delivered the release to the City. That same day, Weber wrote to the Court to apologize for the delay in providing the release.  In her letter, Weber explained that she is a solo practitioner and was one of the lead attorneys in litigation arising from arrests during the 2004 Republican National Convention ("RNC").  Noting that "[t]hese cases have required a super-human effort on my part over the past several months," Weber admitted that "[i]t has, consequently, been difficult for me to pay proper attention to my non-RNC cases."  Weber's letter was docketed and filed with an endorsement warning her that "further similar failures to comply diligently with discovery obligations in this case may result in dismissal."  The endorsement also adjourned the initial conference to November 30, 2007.

The City wrote again on September 28 to complain about plaintiff's September 26 letter, which it deemed "misleading and unfair."  The release produced by plaintiff on September 26, the City explained, was not properly completed (it did not include docket or indictment numbers) and might not allow the City to access the necessary records.[4]  As a result, the City would not have sufficient time to obtain the documents needed to respond to the amended complaint.  In addition to a further 45-day extension of its time to respond to the complaint, the City requested that plaintiff be ordered to produce a properly completed release by a date certain.

A telephone conference was held with the parties on October 5.  The plaintiff was reminded of her responsibility to be diligent in the prosecution of the case.  Following the conference, an Order of October 9 required plaintiff to provide a compliant release pursuant to New York Criminal Procedure Law § 160.50 by October 19 or submit a letter explaining why her efforts had been unsuccessful.  The initial conference was rescheduled for December 7, and defendants were directed to answer the amended complaint by that date.  The plaintiff finally produced the required release.

---

[4] The release form, attached by the City to its September 28 letter, requires little investment of effort on plaintiff's behalf.  She needed only to provide the name of the criminal action terminated in her favor, its docket or indictment number, and her signature, and have the form notarized.

3. Delays in Conducting Discovery

At the initial conference on December 7, a schedule for the balance of the litigation was established, including a December 21, 2007 deadline for plaintiff to provide her medical releases to the defendants.  Fact discovery was to close on June 27, 2008.  Following expert discovery, a pretrial order or summary judgment motion was due on October 3, 2008.

About a month after the close of fact discovery, plaintiff's counsel wrote the Court on July 24, 2008 to request a 120-day extension (running from the date of the letter) of the fact discovery deadline.[5]  She noted that defendant McDonald's consented to the extension, but that the City wanted the 120 days to run from the end of future settlement discussions, hoping to avoid the costs of discovery.  Plaintiff also requested a conference to discuss outstanding discovery disputes and stated that the resolution of one of the disputes, involving the identities of officers at a New York City Police Department precinct, was likely to create the need for amendments to the complaint.  Plaintiff explained that she had not yet amended her complaint to name any police officers because "[i]n order to avoid piecemeal, sequential amendments to the complaint, plaintiff has held off on amending the complaint until she can

_____

[5] Weber had written a substantially similar letter on July 7, 2008 to the Magistrate Judge to whom the parties had been referred for settlement discussions.

add all of the police officer defendants."  The letter revealed
that no depositions had been taken and that the plaintiff wanted
to depose "several" police officers and some other witnesses,
including an unknown number of McDonald's employees.

A telephone conference with the parties was held on the
record on July 31, 2008.  At the conference, the delays and lack
of diligence, especially on plaintiff's part, were noted.
Plaintiff had been warned about the possibility of dismissal for
failure to prosecute ten months earlier, and the schedule set at
the initial conference in December 2007 had been set to
accommodate her needs.  The parties had failed to have any
settlement discussions before Magistrate Judge Dolinger, had not
begun depositions, and did not mention any existing discovery
disputes or request any extension of fact discovery until a
month after they were supposed to have completed the process.

The City noted that plaintiff had given only vague
information regarding the visits to the precinct she made to
attempt to file a complaint against the McDonald's employee.
While the plaintiff had identified six or seven dates of visits
to the precinct, she had given no names for the officers with
whom she had spoken or even a general physical description of
them, such as their gender, race, or height.  The City explained
that the assigned desk officer might not have been at the desk
when plaintiff appeared at the precinct and that the plaintiff

9

could not have a good-faith basis for naming an assigned desk officer as a defendant.  Without descriptions from the plaintiff, the City was still not able to identify the officers with whom plaintiff may have interacted.  Weber insisted that she was entitled to the names of the assigned desk officers in discovery and that their names were all she wanted to know.

Following the telephone conference, an Order of July 31, 2008 gave plaintiff five days to file an amended complaint "naming each of the police officers present at McDonald's restaurant on the date of the incident alleged."  The Order also required the City to "identify the desk officers assigned at the times and dates specified by plaintiff" by August 29.  Plaintiff was directed to amend her complaint further by September 5 to include any additional police officers, but warned that the complaint must be amended "consistent with [Weber's] obligations under Rule 11" and that "[t]here shall be no further amendment or joinder of additional parties after September 5, 2008." Additionally, the Order extended fact discovery to December 19 and set a March 27, 2009 due date for either a summary judgment motion or pretrial order.

4. The Second and Third Amended Complaints

Plaintiff amended her complaint for the second time on August 6, 2008, naming Officers Joseph Bonner, Dennis Morgano, Bryan Hanson, Jordan Bistany, and Sergeant Liz Salinas as

10

defendants.   She filed a Third Amended Complaint on September 5, adding Sergeants Michael McGovern, Christopher Newsom, Ralph Perfetto, John Adriano and Luigi Pagano.   Neither the Second nor the Third Amended Complaints ties any of the ten officers to either the incident at McDonald's or the precinct where plaintiff alleges she was strip-searched and repeatedly denied the opportunity to file a complaint.   The Third Amended Complaint lists all of the above individuals together in one paragraph and alleges that they were police officers.   The allegations of wrongdoing found elsewhere in the complaint refer only to "defendant police officers," failing to identify any individual officer or even a group of officers, despite the fact that these officers were identified to plaintiff as present at either McDonald's or the precinct.

The filing of the Third Amended Complaint did not put an end to the disputes and delays.   On August 18, the City wrote a letter stating that, while plaintiff had filed her Second Amended Complaint on August 6, she had not yet served the five individual defendants it named.   The plaintiff was directed to serve the defendants named in the amended complaint by September 19, 2008.

The City wrote again on September 23, representing that plaintiff had not properly served the defendants in compliance with Rule 4, Fed. R. Civ. P., because the delivered papers did

not include a summons directed to each defendant.  Instead, plaintiff had listed all of the individual City Defendants together on the summons and highlighted the name of the particular individual being served.  Plaintiff refused to correct the defects in service and wrote a letter on September 24 contesting whether the Federal Rules require inserting each defendant's name into the "To:" section of a summons.

A telephone conference was held on the record on September 25 to discuss the parties' submissions.  The conference opened with the Court noting the numerous delays that had thus far occurred.  Both parties were heard on the summons issue. Following the conference, an Order of September 26 directed plaintiff to serve the individual City Defendants by October 3 in accordance with Rule 4(a)(1)(B), Fed. R. Civ. P., which requires that a summons be "directed to" each defendant. Defendants were ordered to answer or otherwise respond by November 3.[6]

5. City Defendants' Motion to Dismiss or for Summary Judgment

On November 3, the City Defendants moved to dismiss or for summary judgment.  A November 5 Order required plaintiff to oppose the motion by November 21 and the City Defendants to

---

[6] Orders of October 24 and December 10 addressed the parties' disputes regarding access to the plaintiff's medical providers. See Sforza v. City of New York, No. 07 Civ. 6122 (DLC), 2008 WL 4701313, at *3 (S.D.N.Y. Oct. 24, 2008).

reply by December 5.  Plaintiff wrote a letter on November 5,
stating that she had "not yet had the opportunity to conduct any
depositions whatsoever" and noting that "much of the paper
discovery is still outstanding."  She asked that the City be
directed to withdraw its motion without prejudice for refiling
at the close of discovery or that plaintiff be permitted to file
her opposition papers at the close of discovery.  In the
alternative, she requested until December 5 to submit her
opposition, stating that "[f]our weeks is the norm for
opposition papers, and, as a solo practitioner with a very busy
practice, I will need every minute of those four weeks."[7]  City
Defendants submitted a letter opposing plaintiff's requests.  An
Order of November 13 authorized plaintiff to file her opposition
to the motion to dismiss by December 5, with City Defendants'
reply due on December 19.

    The parties next submitted a series of letters concerning
various discovery disputes.  On November 12, a letter was
received from Weber listing ten discovery disputes and
requesting a conference to address them.  The requests
concerned, inter alia, the City's refusal to provide information
regarding whether the officers involved in the incident were
using steroids, its insistence that any information regarding

---

[7] In fact, Local Civil Rule 6.1(b) states that parties have ten
business days to file opposition papers to most motions.

the individuals who had placed 911 calls regarding the incident
at McDonald's must be accompanied by an attorneys'-eyes-only
stipulation, as well as its refusal to provide various records
and training documents relevant to the issue of municipal
liability until after motion practice.  Besides opposing the
plaintiff's positions on these issues, the City requested a stay
of depositions until its November 3 motion was resolved.  At a
December 2 conference held on the record, neither party objected
to a stay of depositions pending resolution of City Defendants'
motion.  The parties were ordered to complete document discovery
by December 19.

    Plaintiff submitted her opposition to the motion to dismiss
or for summary judgment on December 5.  That opposition included
plaintiff's own declaration, which did not specifically identify
any police officers.  The motion was fully submitted on December
19.

                            DISCUSSION

    The City Defendants' arguments that the Third Amended
Complaint must be dismissed with respect to the claims brought
against individual City Defendants will first be addressed,
followed by analysis of claims against the City.  A trial court
considering a Rule 12(b)(6) motion must "accept as true all
factual statements alleged in the complaint and draw all
reasonable inferences in favor of the non-moving party."

                                14

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss."  Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).

A court considering a Rule 12(b)(6) motion applies a "flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (citation omitted).  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).

Under the pleading standard set forth in Rule 8(a)(2), complaints must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "[A] plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests."  Leibowitz v. Cornell Univ., 445 F.3d 586, 591 (2d Cir. 2006).  Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, and therefore is "not meant

to impose a great burden upon a plaintiff." Dura Pharms., Inc.
v. Broudo, 544 U.S. 336, 347 (2005).  No heightened or more
specific pleading standard applies to claims brought under
§ 1983.  Leatherman v. Tarrant County Narcotics Intelligence and
Coordination Unit, 507 U.S. 163, 168 (1993); Iqbal v. Hasty, 490
F.3d 143, 153 (2d Cir. 2007).  § 1983 claims need not be plead
with particularity, but may be averred generally.  Leatherman,
507 U.S. at 168.

In Wynder v. McMahon, 360 F.3d 73 (2d Cir. 2004), an
employment discrimination claim also brought under § 1983, the
court noted that "Rule 8 does not necessarily require . . . that
the complaint separate out claims against individual
defendants."  Id. at 80.  Deciding that Wynder's complaint
satisfied Rule 8, however, the court also noted that "each of
the named defendants-appellees is explicitly tied to one or more
of Wynder's allegations."  Id.  "[R]eading the complaint
carefully, the individual defendants can discern which claims
concern them and which do not."  Id.  The court ultimately found
that plaintiff's complaint, which was "a model of neither
clarity nor brevity," id. at 79, met the standard of Rule 8(a).
The Wynder court noted, however, that a complaint which passed
muster under Rule 8 might nonetheless be dismissed under Rule
12(b)(6) for failure to state a claim.  Where "the complaint
accuses all of the defendants of having violated all of the

16

listed constitutional and statutory provisions," defendant may move to dismiss "those causes of action as to which no set of facts has been identified that support a claim against him."

Id.

1. Claims Against Individual City Defendants

42 U.S.C. § 1983 provides in part that

> [e]very person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the
> District of Columbia, subjects, or causes to
> be subjected, any citizen of the United
> States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities
> secured by the Constitution and laws, shall
> be liable to the party injured in an action
> at law, suit in equity, or other proper
> proceeding for redress.

It is "well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (citation omitted).

Sforza's pleading fails to allege personal involvement of any defendant in any of the actions which allegedly violated her rights.  It does not attribute any of the actions giving rise to Sforza's allegations to any of the specific officers named, or to any group of the officers.  Sforza offers no arguments explaining why she fails to identify any specific police officers or suggesting that the City failed to identify officers

17

as present at either McDonald's or the precinct.  Nor is it possible to infer from the list of police officers which ones were personally involved in which deprivations of Sforza's rights, whether it is the excessive use of force, an unlawful arrest, an abusive strip search, or a refusal to take a complaint.[8]

The individual City Defendants have therefore not received fair notice regarding which of their actions gave rise to the claims upon which the complaint is based, because it is impossible to discern from the Third Amended Complaint why Sforza has named any of the police officers she lists as defendants.  As such, the Third Amended Complaint fails to state a claim against any individual City Defendant and will be dismissed pursuant to Rules 8 and 12(b)(6), Fed. R. Civ. P.

Sforza has requested leave to amend her complaint to allege personal involvement in the event that the City Defendants' motion is granted on these grounds.  The July 31, 2008 Order stated that Sforza would not be granted further leave to amend following her submission of the Third Amended Complaint.

_____

[8] Plaintiff's response in her opposition papers that the identity of the officers "is obvious" is not sufficient.  It is not at all obvious from the statement in the complaint that "police officers" took certain actions against her which officers, and how many officers, should be held responsible for any of the enumerated violations of her rights.

Rule 16, Fed. R. Civ. P., governs leave to amend after a scheduling order has been entered.  Rule 16 provides that a district court may enter a scheduling order that limits the time to amend the pleadings, and that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge."  Fed. R. Civ. P. 16(b).  Rule 16 "is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed."  Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) (citation omitted).  Disregarding the instructions of a scheduling order "would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.  Rule 16 was drafted to prevent this situation."  Id. (citation omitted).

"[A] district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."  Id.  In determining whether a party has shown good cause, "the primary consideration" is whether the movant has been diligent.  Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007).  Another relevant factor

is prejudice to the defendants.[9]  Id.  The Second Circuit has upheld the denial of a request seeking leave to amend under Rule 15 when the district court judge had earlier "expressly admonished the plaintiff, before the limitations period had expired, to discover the names of the individual officers and to amend his complaint to add them as defendants."  Soto v. Brooklyn Correctional Facility, 80 F.3d 34, 37 (2d Cir. 1996).

Sforza has made no showing of diligence, nor has she attempted to do so.  The City's correspondence, the conferences with the Court, and the Order of July 31, 2008 fully alerted her to the deficiencies in her pleading.  Further, she had over a year from the initial filing of the complaint until the deadline set by the July 31 Order to craft an adequate pleading.  See Parker, 204 F.3d at 340.  The time for amendment having closed, further leave to amend shall not be granted.[10]

---

[9] In addition to the burden placed on them by the plaintiff's neglect of her obligations to prosecute her claims diligently, the individual City Defendants contend that they have been prejudiced by the failure of the Third Amended Complaint to link them to specific unlawful acts.  Specifically, they point out that they have been unable to craft the argument that they are entitled to receive qualified immunity from claims pressed in this lawsuit and to be dismissed as defendants.  Given the plaintiff's lack of diligence it is unnecessary to reach this additional factor supporting dismissal.

[10] It is noteworthy that the plaintiff did not submit a proposed amended pleading with her opposition to the motion to dismiss demonstrating that she could cure the defects in her pleading while complying with the mandates of Rule 11, Fed. R. Civ. P.

Lest this seem an overly harsh result, it is worth pausing to note several examples of plaintiff's lack of diligence in pursuing amendment of the pleadings and discovery in this case. Plaintiff took over two months to return the release to the City, which required the barest of information and without which individual defendants could not be named, an answer could not be filed, and discovery could not begin.  Plaintiff's counsel acknowledged in her September 26, 2007 letter that she had neglected to attend to Sforza's case properly, and her actions following the letter show similar signs of neglect.

The City included the identities of five police officers with its initial disclosures on December 7, 2007.  Plaintiff did not attempt to amend her complaint for over eight months, until the Order of July 31, 2008 directed her to do so.  Meanwhile, she conducted little, if any, fact discovery to attempt to learn information that would help her to meet her burden of proof, and did not contact Chambers to request an extension until a month after fact discovery should have been completed.  Finally, after the extension of fact discovery was granted, plaintiff waited over three months before noticing the depositions of the ten individual City Defendants, attempting to compress those ten depositions into a four-week timeframe (plaintiff was unavailable for one week of the remaining discovery period) that included the Thanksgiving holiday.

It is unfortunate that plaintiff's claims against the individual City Defendants will be dismissed before consideration of their merits.  Plaintiff, however, had over a year to amend her pleading to state a claim against the individual City Defendants, was specifically directed to do so by the July 31 Order, and the issue was discussed with plaintiff's counsel in conferences before the Court on multiple occasions.  She had an additional four months between the July 31 Order and the submission of her affidavit accompanying the opposition to the motion to dismiss, and still did not take that opportunity to identify any specific police officers.  The pleading deficiencies were not the result of a single oversight, but rather the regrettable manifestation of a pattern of delay and neglect.

2.  Municipal Liability

Having dismissed Sforza's claims against the individual City Defendants, it is still necessary to consider defendants' arguments that claims against the City should be dismissed. Defendants assert that, because plaintiff cannot show that any individual City Defendant violated a constitutional right, her federal claims against the City must fail.  City Defendants also state that Sforza's claims do not meet the municipal liability standards established in Monell v. Department of Social Services., 436 U.S. 658 (1978), because she does not identify

22

any policy, custom, or practice that violated her rights and impermissibly attempts to establish liability based on a single incident.  Finally, the City argues that it is entitled to summary judgment on each of the claims.  The City has shown that it is entitled to summary judgment on each of the plaintiff's claims except the claim for excessive force.

A municipality can be held liable pursuant to § 1983 only if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  Monell, 436 U.S. at 694; Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 128 (2d Cir. 2004).  A finding of municipal liability without finding a violation of constitutional rights by an individual is not permitted where 1) the municipal liability arises from the authorization of or a policy leading to the individual's alleged violation and 2) there is a finding that no individual violation occurred.[11]  "[N]either Monell v. New York City Dept. of Social

_____

[11] Despite the City's argument, "municipal liability for constitutional injuries may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants."  Barrett v. Orange County Human Rights Comm'n, 194 F.3d 341, 350 (2d Cir. 1999).  In Barrett, the Second Circuit held that the Human Rights Commission could be liable for infringing Barrett's constitutional rights even though the most prominent members of the Commission, who were named as individual defendants, were found not to be liable.  Id.  The court reasoned that the Commission was a multi-member body whose decisions were made by

23

Services, nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."   City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).   In Heller, a jury found that a police officer had not used excessive force (and therefore had not violated § 1983).   Id. at 798.   The Supreme Court held that the city could not be held liable under an alleged unconstitutional municipal policy of using excessive force during arrests.   Id. at 799.   The Court observed that "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." Id. (emphasis removed).

Applying Heller, the Second Circuit has recognized that "a municipality cannot be liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights."   Curley v. Village of Suffern, 268 F.3d 65, 71 (2d Cir. 2001).   Curley, like Heller, involved allegations that the conduct of specific

a vote of all the members; therefore, its acts could be independent of two of its members and Barrett's alleged injuries were not solely attributable to the actions of the named defendants.   Id.

24

individual police officers injured plaintiff, the complaint
named all of those police officers as defendants, and there was
"no question with respect to whether another officer violated
plaintiff's rights for which the village might be liable." Id.
The liability of the municipality for failure to train or
properly supervise was therefore tied to the liability of the
individual defendants.  Id.  As the jury had found no
deprivation of plaintiff's rights with respect to the officers'
alleged use of excessive force, the municipality could not be
held liable, because it was "implicated in plaintiff's amended
complaint only by way of the individual defendants' conduct."
Id.

        More recently, the Second Circuit, citing Heller, declined
to hold the City of New York liable under § 1983 because it
found at the summary judgment stage that the individual police
officer defendants had not violated the constitutional rights of
a confidential informant whom they allegedly failed to protect
from being assaulted by a drug dealer.  Matican v. City of New
York, 524 F.3d 151, 154 (2d Cir. 2008).  The police officers
named as defendants were the three officers in whose sting
operation plaintiff had assisted.  Id. at 153.  As in Curley,
they were the entire group of officers who could have been
responsible for the alleged violation of Matican's rights.
Before finding that the individual officers had not violated

plaintiff's right to substantive due process, the court framed the issue as follows, citing Heller: "[d]id the officers' actions violate Matican's constitutional rights?  If they did not, then the City cannot be liable to Matican under § 1983, regardless of whether the officers acted pursuant to a municipal policy or custom."  Id. (citation omitted).

Where claims against individual municipal defendants are dismissed without a finding on the merits, however, the Monell claim survives.  For instance, the Second Circuit has held that granting an individual officer qualified immunity[12] does not dispose of the issue of municipal liability.  See Curley, 268 F.3d at 71; Prue v. City of Syracuse, 26 F.3d 14, 19 (2d Cir. 1994).  The same is true here: where claims against the individual officers have been dismissed without reaching their merits, it is still possible for a jury to find a constitutional violation for which a municipality may, though its policies, practices, or customs, be liable.

Alternatively, the City argues that plaintiff has not stated a claim for Monell liability because she has not identified any policy, custom, or practice resulting in a

---

[12] The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 129 S.Ct. 808, 815 (2009) (citation omitted).

violation of her rights, and her factual allegations describe
only one incident purportedly involving wrongdoing, which is
insufficient to support a Monell claim.  The City relies on
Dwares v. City of New York, 985 F.2d 94 (2d Cir. 1993), which
states that "[a] single incident alleged in a complaint,
especially if it involved only actors below the policymaking
level, generally will not suffice to raise an inference of the
existence of a custom or policy."  Id. at 100.

The plaintiff has adequately identified a municipal policy
and practice for at least some of her claims.  The Third Amended
Complaint alleges that the

> customs, policies, usages, practices,
> procedures and rules of the City of New York
> and the New York City Police Department
> included, but were not limited to, arresting
> and prosecuting individuals solely because
> they are transgender, manufacturing false
> charges against such individuals, using
> excessive force against such individuals,
> and allowing members of the opposite sex to
> search such individuals.

(Emphasis supplied).

The City's argument that plaintiff alleges only one
incident in support of her Monell claim, and that one incident
is insufficient evidence of a City policy, is similarly
unpersuasive.  Monell liability may spring from a single
violation, as long as the conduct causing the violation was
undertaken pursuant to a City-wide custom, practice, or

procedure.  See, e.g., DiSorbo v. Hoy, 343 F.3d 172, 180-81 (2d Cir. 2003) (city liable under Monell for excessive force in simultaneous arrest of two sisters); Mandell v. County of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003) (county held liable under Monell following the retaliatory discharge of an employee).  Dwares, cited by the City, involved a complaint containing insufficient allegations of a custom or practice. Dwares, 985 F.2d at 97, 101.  Plaintiff's Monell claim will therefore not be dismissed in its entirety on grounds that it either fails to allege a policy or is based entirely on single incidents.

A prerequisite to a Monell claim, of course, is a violation of plaintiff's constitutional rights.  Hartline v. Gallo, 546 F.3d 95, 99-100 (2d Cir. 2008).  To address the City's motion, it is necessary to determine whether each of the § 1983 and § 1985 claims in the Third Amended Complaint 1) pleads a cause of action and 2) survives the summary judgment motion.

Sforza's opposition and November 5, 2008 letter to the court, discussed above, are peppered with assertions that a summary judgment motion is premature because discovery is not yet complete.  Sforza has not, however, filed an affidavit pursuant to Rule 56(f) to explain that she cannot present facts in support of her opposition because of inadequate discovery.

"The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." Hellstrom v. U.S. Dept. of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000) (citation omitted). "[S]ummary judgment is generally disfavored when the party opposing the motion has not obtained discovery." Cable Science Corp. v. Rochdale Village, Inc., 920 F.2d 147, 152 (2d Cir. 1990) (dicta). Rule 56(f), Fed. R. Civ. P., "sets forth a specific procedure by which a party lacking information necessary to oppose a summary judgment motion may seek further discovery." Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 573 (2d Cir. 2005) (per curiam).

> To request discovery under Rule 56(f), a party must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful.

Gualandi v. Adams, 385 F.3d 236, 244 (2d Cir. 2004). "The failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Di Benedetto v. Pan Am World Service, Inc., 359 F.3d 627, 630 (2d Cir. 2004) (citation omitted). "A reference to Rule 56(f) and to the need for additional discovery in a memorandum of law in opposition to a

motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit." Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994). See generally National Union Fire Ins. Co. of Pittsburgh, PA. v. Stroh Companies, Inc., 265 F.3d 97, 117 (2d Cir. 2001) (requiring Rule 56(f) affidavit and denying request for additional discovery when party had several months to pursue discovery).

Sforza may not, therefore, defeat the City's summary judgment motion by simply arguing that she requires more discovery. Even if it were appropriate to consider arguments presented solely in a memorandum, with a single possible exception, her memorandum has not focused her request for more discovery on the specific facts she needs, how she seeks to obtain them, and why they would make a difference.[13] Given that Sforza has had nearly a year for discovery, it would be especially important for her to indicate which arguments she can support with the discovery that has already occurred and which arguments will require depositions or other currently incomplete discovery for their support. To the extent, therefore, that a claim states a cause of action and the City has moved for summary judgment, the summary judgment motion shall be considered.

---

[13] The single exception relates to her equal protection claim and her explanation that she needs to depose individual plaintiffs to discover their discriminatory motives.

Summary judgment may not be granted, however, unless all of
the submissions taken together "show that there is no genuine
issue as to any material fact and that the moving party is
entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The moving party bears the burden of demonstrating the
absence of a material factual question, and in making this
determination the court must view all facts in the light most
favorable to the non-moving party.  Sista v. CDC Ixis N. Am.,
Inc., 445 F.3d 161, 169 (2d Cir. 2006).  When the moving party
has asserted facts showing that the non-movant's claims cannot
be sustained, the opposing party must "set forth specific facts
showing that there is a genuine issue for trial," and cannot
rest on the "mere allegations or denials" contained in the
pleadings.  Fed. R. Civ. P. 56(e); accord Sista, 445 F.3d at
169. That is, the non-moving party "must do more than simply
show that there is some metaphysical doubt as to the material
facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
U.S. 574, 586 (1986).  Only disputes over material facts --
facts that might affect the outcome of the suit under the
governing law -- will properly preclude the entry of summary
judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

Sforza asserts that the following claims constitute
deprivations of her rights in violation of § 1983: false arrest,

malicious prosecution, malicious abuse of process (in connection with her arrest); excessive force; failure to permit her to file charges against the McDonald's employee; violation of equal protection; and conspiracy to deprive Sforza of her constitutional rights (also brought under § 1985).[14]  Her first claim, though, is for a general "Deprivation of Federal Civil Rights Under § 1983."

3.  "Deprivation of Federal Civil Rights"

Sforza's claim for "deprivation of federal civil rights" does not state of which rights she was deprived -- only that the First, Fourth, Fifth, Eighth, and Fourteenth Amendments were involved -- or provide any information on the deprivation she allegedly experienced.  Defendants interpret this claim as possibly including claims for violations of procedural or substantive due process.  Without any factual illumination of this claim, though, Sforza has failed to meet the Rule 12(b)(6) standard requiring her to "provide the grounds upon which [her] claim rests through factual allegations sufficient to raise a right to relief above the speculative level."  ATSI Commc'ns, Inc., 493 F.3d at 98.  While plaintiff incorporates all of her

---

[14] Sforza makes no explicit allegation of deliberate indifference to her medical needs, although the City's motion papers address this claim.  Sforza notes in her opposition that her complaint does not include a cause of action for deprivation of medical care.  Given this acknowledgment, the City's arguments on the issue of indifference to medical needs will not be considered.

factual allegations by reference into her "deprivation of civil rights" claim, the results of combining the myriad factual events described in the entirety of the complaint with the range of constitutional rights contained in this claim is that defendants do not have "fair notice of what the claim is and the grounds upon which it rests." <u>Leibowitz</u>, 445 F.3d at 591. Sforza's "deprivation of federal civil rights" claim will therefore be dismissed on Rule 8(a)(2) grounds.

4. False Arrest

Sforza alleges that, when the police officers arrived on the scene at McDonald's, they refused to allow her to describe her confrontation with the manager and, relying on false statements given by a McDonald's employee that Sforza had attacked him, they falsely arrested and imprisoned her. The City moves for summary judgment on this claim, arguing that probable cause for Sforza's arrest existed, because the arresting officer was entitled to rely on the statements of the complaining witness, and that, in any event, the manager's statement was corroborated. In support of its argument, the City has submitted the complaint taken at McDonald's, in which the manager of McDonald's stated that Sforza did "strike [him] several times with a closed fist and kicked [him] in the legs," causing "bruising [and] swelling to [his] legs," as well as the arrest worksheet documenting the same. Plaintiff concedes that

the McDonald's manager reported to police that plaintiff had assaulted him.

Allegations of unconstitutional false arrest are analyzed by "look[ing] to the law of the state in which the arrest occurred." Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006) (citation omitted). The elements of a claim for false arrest under New York law are that

> (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.

Curry v. City of Syracuse, 316 F.3d 324, 335 (2d Cir. 2003) (citation omitted). A claim for false arrest or false imprisonment fails when the arresting officer had probable cause to make the arrest. Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007).

The requirement of probable cause does not create a high bar for law enforcement. It exists where "the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." United States v. Delossantos, 536 F.3d 155, 158 (2d Cir. 2008) (citation omitted). "When information is received from a putative victim or an eyewitness, probable cause exists, unless the

34

circumstances raise doubt as to the person's veracity." Curley,
268 F.3d at 70.  Probable cause does not inquire into the
arresting officers' subjective motivations, but rather asks
"whether the officers' actions are 'objectively reasonable' in
light of the facts and circumstances confronting them." Bryant
v. City of New York, 404 F.3d 128, 136 (2d Cir. 2005) (citation
omitted).  "[S]ummary judgment dismissing a plaintiff's false
arrest claim is appropriate if the undisputed facts indicate
that the arresting officer's probable cause determination was
objectively reasonable." Jenkins, 478 F.3d at 88.  A court
deciding whether an arrest is reasonable "must examine the
totality of the circumstances of a given arrest." Delossantos,
536 F.3d at 159.  An officer is not "required to explore and
eliminate every plausible claim of innocence before making an
arrest." Jaegly, 439 F.3d at 153.  "[A]n officer's failure to
investigate an arrestee's protestations of innocence generally
does not vitiate probable cause." Panetta v. Crowley, 460 F.3d
388, 395-96 (2d Cir. 2006).

Plaintiff was arrested on suspicion of misdemeanor (third-
degree) assault.  A person is "guilty of assault in the third
degree when: (1) with intent to cause physical injury to another
person, he causes such injury to such person or to a third
person . . . ." N.Y. Penal Law § 120.00.  The statements of the
McDonald's manager establish probable cause to arrest Sforza for

assault, and Sforza has not offered evidence to raise a question
of fact regarding that finding.

Sforza argues that the manager's statement was insufficient
to establish probable cause for several reasons.  Sforza first
asserts that the manager's lack of injuries, contrasted with
Sforza's condition ("bruised, bloodied, and missing teeth")
contradicted the McDonald's employee's account of a fight
instigated by Sforza.  By not comparing the two parties'
injuries, she argues, the police disregarded exculpatory
evidence, negating a finding of probable cause.  The possibility
that both parties were injured may indicate the existence of
probable cause to arrest the manager as well, but the manager's
lack of severe injury does not indicate that no fight occurred
or that the manager was not punched or kicked, and misdemeanor
assault does not require serious physical injury.  N.Y. Penal
Law § 120.00.  While Sforza contests whether the manager had any
visible injuries at all, the arrest report and complaint show
that the officers had the impression that he did.  In any event,
Sforza's own injuries and her belief that the manager was not
injured do not constitute "plainly exculpatory evidence."

The Second Circuit case Sforza cites for the "plainly
exculpatory evidence" exception to the establishment of probable
cause by a complainant's statement is based on an Eighth Circuit
case that listed "DNA evidence and a videotaped account of the

crime that conclusively establish the suspect's innocence" as the kind of "plainly exculpatory" evidence negating a finding of probable cause.  Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999) (cited in Panetta, 460 F.3d at 395).  That one participant in a fight is injured less than the other does not approach the "plainly exculpatory" level contemplated by Kuehl.  Neither is the involvement of a witness in a confrontation enough to cast doubt on that witness's veracity and negate probable cause.  See Curley, 268 F.3d at 69-70 (probable cause for plaintiff's arrest supported by testimony of witnesses involved in fight with plaintiff); Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997) (probable cause supported by statement of witness identifying plaintiff as his assailant and witness's visible injuries, despite plaintiff's claims that he had acted in self-defense).

In addition, Sforza argues that on a motion for summary judgment "the Court must accept plaintiff's statement that she did not assault the manager in any way."  The deference that her declaration of innocence receives at the summary judgment stage does not demonstrate a lack of probable cause for her arrest. Probable cause does not speak to the arrestee's ultimate guilt or innocence.  While probable cause requires more than a "mere suspicion" of wrongdoing, its focus is on "probabilities," not "hard certainties."  Walcyk v. Rio, 496 F.3d 139, 156 (2d Cir.

2007) (citation omitted).  The arresting officer need not be certain that the arrestee will be successfully prosecuted. Curley, 268 F.3d at 70; see also Panetta, 460 F.3d at 395 ("the fact that an innocent explanation may be consistent with the facts alleged does not negate probable cause").  Adopting Sforza's standard for false arrest, in which the innocence of the arrestee negates probable cause, would allow any person acquitted of a crime to bring charges for false arrest.  Summary judgment is granted to the City on the false arrest claim.

5. Excessive Force

     Sforza has alleged excessive use of force during her arrest and detention.  She claims that she was handcuffed too tightly, creating ongoing numbness in her hands, and that the police deliberately slammed her head twice into the roof of a police vehicle, causing bruises that remained for two months. Defendants assert that they are entitled to summary judgment because the medical records reflect injury only to plaintiff's left arm.  They note that Sforza complained of pain to her arm and neck and did not report any head or wrist injuries or pain.

     "[E]xcessive force claims must be analyzed under the rubric of the constitutional right that is most directly implicated by the facts giving rise to the claim." Nimely v. City of New York, 414 F.3d 381, 390 n.7 (2d Cir. 2005).  Claims that law enforcement officers have used excessive force in the course of

an arrest are analyzed "under the Fourth Amendment and its
'reasonableness' standard." Kerman v. City of New York, 261
F.3d 229, 238-39 (2d Cir. 2001) (citation omitted).  Police
officers' application of force is excessive, in violation of the
Fourth Amendment, if it is "objectively unreasonable in light of
the facts and circumstances confronting them, without regard to
the officers' underlying intent or motivation." Jones v.
Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (citation omitted).
Determining whether excessive force has occurred requires a
court to weigh the "facts and circumstances of each particular
case, including the crime committed, its severity, the threat of
danger to the officer and society, and whether the suspect is
resisting or attempting to evade arrest." Id. (citation
omitted).   A plaintiff need not demonstrate serious injury to
prevail in an excessive force claim; bruising and other non-
permanent injuries are sufficient.  Maxwell v. City of New York,
380 F.3d 106, 108 (2d Cir. 2004); Robison v. Via, 821 F.2d 913,
924 (2d Cir. 1987) ("If the force used was unreasonable and
excessive, the plaintiff may recover even if the injuries
inflicted were not permanent or severe").

The conflicting accounts of the amount of force used
preclude entry of summary judgment.  Granting summary judgment
based on the hospital records would require that inferences be
inappropriately drawn in the City's favor.

6. Malicious Prosecution

     Defendants also seek summary judgment on the malicious
prosecution claim.  "To sustain a § 1983 claim of malicious
prosecution, a plaintiff must demonstrate conduct by the
defendant that is tortious under state law and that results in a
constitutionally cognizable deprivation of liberty." Kinzer v.
Jackson, 316 F.3d 139, 143 (2d Cir. 2003).  Put otherwise, a
plaintiff must establish the elements of malicious prosecution
under state law, and then show that her Fourth Amendment rights
were violated after legal proceedings were initiated.  See
Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) (citation
omitted).

     In New York, a plaintiff bringing a malicious prosecution
claim must show that a prosecution was initiated without
probable cause to believe that it could succeed, that the
prosecution was brought with malice, and that the prosecution
terminated in plaintiff's favor.  Boyd v. City of New York, 336
F.3d 72, 76 (2d Cir. 2003).  The existence of probable cause at
the time of arrest may not be sufficient to provide probable
cause for a prosecution, as

               even when probable cause is present at the
               time of arrest, evidence could later surface
               which would eliminate that probable cause.
               In order for probable cause to dissipate,
               the groundless nature of the charge must be
               made apparent by the discovery of some
               intervening fact.

Kinzer, 316 F.3d at 144.

To show that her legal rights were violated after legal proceedings were initiated, plaintiff must show a seizure or other "perversion of proper legal procedures" implicating her rights under the Fourth Amendment.  Washington v. County of Rockland, 373 F.3d 310, 316 (2d Cir. 2004) (citation omitted). That deprivation must be "pursuant to legal process," as "[t]he essence of malicious prosecution is the perversion of proper legal procedures."  Singer v. Fulton County Sheriff, 63 F.3d 110, 117 (2d Cir. 1995) (citation omitted).  Where the arrest was effected without a warrant, any post-arraignment deprivation of liberty constitutes the unlawful seizure.  See id.

Sforza has offered no evidence that the probable cause that existed at the time of the arrest dissipated between the arrest and her prosecution.  Without any evidence supporting the vitiation of probable cause, Sforza has raised no material issue of fact in support of her claim of malicious prosecution. Sforza has also submitted no evidence demonstrating malice or any post-arraignment deprivation of liberty.  Summary judgment will be granted in the City's favor on this claim.

7. Malicious Abuse of Process

Defendants argue that Sforza has failed to present evidence supporting her claim for abuse of process.  As with malicious

prosecution, courts look to state law for the elements of a §
1983 claim based on the malicious abuse of process claim.  Cook
v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994).  New York recognizes
a malicious abuse of process claim against "a defendant who (1)
employs regularly issued legal process to compel performance or
forbearance of some act (2) with intent to do harm without
excuse of justification, and (3) in order to obtain a collateral
objective that is outside the legitimate ends of the process."[15]
Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003)
(citation omitted).  In addition, a plaintiff bringing an abuse
of process claim must allege actual or special damages.  Bd. of
Educ. v. Farmingdale Classroom Teachers Ass'n, 38 N.Y.2d 397,
405 (1975).  "[L]egal process means that a court issued the
process, and the plaintiff will be penalized if he violates it,"
such as an arraignment.  Cook, 41 F.3d at 80 (citation omitted).
See also Shain v. Ellison, 273 F.3d 56, 68 (2d Cir. 2001).

   While a lack of probable cause is not explicitly an element
of an abuse of process claim, the presence of probable cause
negates a claim for abuse of process, particularly the second

---

[15] The City states that "it is unsettled in this Circuit whether
abuse of process under state law is even the basis for a § 1983
claim," citing a civil commitment case, Olivier v. Robert L.
Yeager Mental Health Ctr., 398 F.3d 184, 189 n.4 (2d Cir. 2005).
Numerous decisions in this Circuit have addressed § 1983 claims
premised on abuse of criminal process.  See, e.g., Savino v.
City of New York, 331 F.3d 63, 76 (2d Cir. 2003); Shain v.
Ellison, 273 F.3d 56, 68 (2d Cir. 2001).

element.  See Rosen v. Hanrahan, 768 N.Y.S.2d 818, 819 (1st Dep't 2003); Berman v. Silver, Forrester & Schisano, 549 N.Y.S.2d 125, 127 (2d Dep't 1989).  Conversely, the lack of probable cause gives rise to an inference of malice, supporting a finding of "intent to harm."  Id. at 126.

The "collateral objective" requirement, in turn, means that defendants must have an improper purpose or objective in instigating the action beyond the plaintiff's criminal prosecution; that defendants had an improper motive is not enough.  Savino, 331 F.3d at 77.  "A malicious motive alone does not give rise to a cause of action for abuse of process."  Id. (citing Curiano v. Suozzi, 63 N.Y.2d 113, 117 (1984)).  "[T]he basis of the tort lies in the use of the process to gain a collateral objective, the accomplishment of which the process in question was not intended to secure."  Pagliarulo v. Pagliarulo, 293 N.Y.S.2d 13, 15 (2d Dep't 1968).

Sforza's abuse-of-process claim fails on multiple grounds. Her opposition to the City's motion does not attempt to address the point that her claim, based on a warrantless arrest, does not involve legal process.  Moreover, Sforza has not

demonstrated a collateral objective.[16]   Summary judgment is

therefore granted for defendants on the abuse of process claim.

8. Violation of Equal Protection

The City submits that Sforza has failed to allege facts

that would state a claim for a violation of the Equal Protection

Clause of the Fourteenth Amendment to the Constitution, and

moves dismissal of, rather than summary judgment on, the equal

protection claim.[17]   "The Equal Protection Clause requires that

the government treat all similarly situated people alike."

Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) (citation

omitted) (overruled on other grounds, Appel v. Spiridon, 531

F.3d 138, 140 (2d Cir. 2008)).   To prove a violation of the

Equal Protection Clause, a plaintiff must demonstrate that she

was treated differently "than others similarly situated as a

result of intentional or purposeful discrimination."   Phillips

v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) (citation omitted).

As the claims against the individual City Defendants shall be

dismissed, Sforza's § 1983 claims are being considered here only

to the extent that they give rise to Monell liability against

---

[16] Sforza argues that improper motive satisfies the collateral
objective requirement.   Savino clearly states the opposite.
Savino, 331 F.3d at 77.

[17] In its reply memorandum, the City shifts its focus to argue as
if it has sought summary judgment on Sforza's equal protection
claim, stating that Sforza has not demonstrated or proven
differential treatment.   Summary judgment arguments with regard
to the equal protection claim will not be considered.

the City, which requires that the conduct causing Sforza's
injury be pursuant to "policy or custom, whether made by its
lawmakers or by those whose edicts or acts may fairly be said to
represent official policy."  Monell, 436 U.S. at 694.

Sforza alleges that her right to equal protection of the
laws was violated because, while individuals who are not
transgender are permitted to file criminal complaints after they
have been attacked, officers at the precinct did not allow
Sforza to file a complaint against the McDonald's manager after
her release from custody.[18]  Her allegations concerning "policy
or custom," meanwhile, identify "arresting and prosecuting
individuals solely because they are transgender, manufacturing
false charges against such individuals, using excessive force
against such individuals, and allowing members of the opposite
sex to search such individuals."

Sforza has not alleged any policy or custom encouraging
officers to reject transgender individuals' attempts to file
complaints.  Because her equal protection claim is premised on

---

[18] Sforza makes other allegations elsewhere in the complaint that
implicate differential treatment based on her transgender
status, but limits her equal protection claim to her attempts to
file a complaint at the precinct.  Her failure to name any of
the officers with whom she interacted during her arrest, strip-
search, detention, precinct visits, and prosecution makes it
impossible to say whether these allegations concern any of the
same officers.  Sforza's opposition also disingenuously
represents additional facts not in the complaint as facts
alleged in support of her equal protection claim.  These
additional allegations will not be considered.

the precinct officers' rejection of her complaints, and she does not allege that the rejections occurred pursuant to municipal policy or custom, she has failed to state a claim against the City for violation of her right to equal protection.

9.  Conspiracy

Sforza's final basis for § 1983 liability is a claim that all defendants conspired to deprive her of her constitutional rights and participated in overt acts in furtherance of the conspiracy by falsely arresting and maliciously prosecuting her. Among other arguments, defendants urge that plaintiff's conspiracy claims be rejected (ostensibly on summary judgment grounds) because she has not proven any underlying violations of § 1983 that were the object of the conspiracy.  Characterizing Sforza's conspiracy allegations as conclusory, they also seek to have them dismissed on this ground.  Sforza also brings conspiracy claims against all defendants under § 1985, alleging the same facts.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  A conspiracy claim under § 1985, meanwhile, requires a showing of

> (1) a conspiracy; (2) for the purpose of
> depriving, either directly or indirectly,
> any person or class of persons of the equal
> protection of the laws, or of equal
> privileges and immunities under the laws;
> (3) an act in furtherance of the conspiracy;
> (4) whereby a person is either injured in
> his person or property or deprived of any
> right or privilege of a citizen of the
> United States.  A § 1985(3) conspiracy must
> also be motivated by some racial or perhaps
> otherwise class-based, invidious
> discriminatory animus behind the
> conspirators' action.

Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007) (citation omitted).  A municipality may be held liable under § 1985 if it is involved in the conspiracy or if the aim of the conspiracy is to "influence the activity of" the municipality.  LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 427 (2d Cir. 1997).

Sforza alleges malicious prosecution and false arrest as the underlying conspiratorial acts.  As explained earlier in this Opinion, she has not raised an issue of fact with regard to either.  She consequently fails to raise a genuine issue regarding the existence of any overt acts conducted in furtherance of the alleged conspiracies.  Summary judgment is therefore granted in the City's favor on both conspiracy claims.

10.  State Law Claims

Sforza's remaining claims thus include one federal claim for municipal liability based on the alleged use of excessive

force against Sforza and twelve state-law claims.  Two of those
claims, alleging violations of New York's Human Rights Law, N.Y.
Exec. L. §§ 292 and 296, and the New York City Human Rights Law,
N.Y.C. Admin. Code §§ 8-107(1)(a) and 8-603(a), are brought
against all defendants (the "Human Rights Claims").  Sforza
brings her remaining ten state-law claims against McDonald's and
its employees only.  The City Defendants ask that the Court
dismiss the Human Rights Claims brought against the City, or, in
the alternative, that it decline to exercise supplemental
jurisdiction over these claims.

The Human Rights Claims accuse all defendants of violating
provisions forbidding discrimination in public accommodations
based on sexual orientation, as well as harassment and violence
motivated by a victim's gender or sexual orientation.  Sforza
incorporates all of her factual allegations into each claim,
which otherwise include only a recitation of the legal standard.
Assuming that the public accommodation is the McDonald's
Restaurant, it is impossible to discern which acts allegedly
constituted the illegal discrimination, harassment, or violence,
and whether each act in question was committed by McDonald's
employees, individual City Defendants, or both.  These
conclusory allegations do not give the City fair notice of the
basis for these two claims, and fail to meet the Rule 8(a)(2)
pleading standard.  They are therefore dismissed.

CONCLUSION

The City Defendants' November 3, 2008 motion to dismiss and for summary judgment against plaintiff's § 1983 and § 1985 claims is granted, except that it is denied with regard to plaintiff's claim for municipal liability based on the use of excessive force in violation of § 1983.  Plaintiff's state law claims for relief under the New York Human Rights Law and New York Administrative Code are dismissed against the City Defendants.

A conference will be held with the parties to discuss the schedule for the remainder of the litigation and the issue of supplemental jurisdiction over the remaining state-law claims.

SO ORDERED:

Dated:    New York, New York
          March 31, 2009

                                    Denise Cote
                                 DENISE COTE
                            United States District Judge

49